ORIGINAL

AUSA: Jackie Delligatti

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KAREN TITO,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 1343 and 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK<br><br>23 MAG 7452 |

SOUTHERN DISTRICT OF NEW YORK, ss.:

MATTHEW MAHAFFEY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Wire Fraud)

1.     From at least in or about December 2015 through at least in or about February 2023, in the Southern District of New York and elsewhere, KAREN TITO, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TITO defrauded her former employer of at least approximately $213,000, and used such proceeds to purchase personal items, luxury goods, and services, and sent and received, and caused others to send and receive, wires and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.     I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter. I base this affidavit on that experience, on my examination of various reports and records, and on my conversations with others. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.     I am involved in an investigation of a fraudulent scheme perpetrated by KAREN TITO, the defendant, on a company based in Atlanta, Georgia ("Company-1"), where she was formerly employed. As explained further below, the investigation has revealed that over the course of her several years of employment at both Company-1 and its predecessor company ("Company-

2"),[1] TITO charged hundreds of thousands of dollars in unauthorized personal expenses to credit cards issued to her by Company-1 and Company-2, and falsely represented in expense reports submitted to Company-1 and Company-2 that such charges were work-related. In total, TITO defrauded Company-1 and Company-2 of more than approximately $213,000 for her purchases of, among other things, luxury goods, stays at well-appointed hotels, spa services, and private car services.

4.      Based on my review of documents and records provided by Company-1, as well as my conversations with representatives from Company-1, I have learned, among other things, the following:

a.      Company-1 maintains its corporate headquarters in Atlanta, Georgia, but maintains an office and frequently hosts events in Manhattan, New York. KAREN TITO, the defendant, was based out of Company-1's office in Manhattan.

b.      TITO worked as the Director of Member Events for Company-1 and, previously, Company-2, from in or about November 2001 through in or about March 2023.[2] TITO's job responsibilities included planning large corporate meeting events for business leaders. These events often took place in hotels or other event spaces over the course of several days at a time, and involved significant budgets that exceeded several hundred thousand dollars.

c.      In her role as Director of Member Events, TITO often used credit cards issued to her by Company-1 and Company-2 to make group purchases at luxury hotels around the country. TITO also often used credit cards issued to her by Company-1 and Company-2 to make other purchases she maintained were necessary for the corporate events she was tasked with organizing. TITO was required to regularly submit reports detailing the expenses she charged to company credit cards.

d.      Both Company-1 and Company-2, for all relevant time periods, maintained an expense policy that prohibited the use of company funds for personal expenses.

5.      Based on my review of documents and records provided by Company-1, as well as my conversations with representatives from Company-1, I know that from in or about December 2015 through in or about February 2023, KAREN TITO, the defendant, charged in excess of at least approximately $106,000 in fraudulent hotel expenses while purporting to be traveling on business on behalf of Company-1 and Company-2. TITO at times arrived several days early or stayed several days after a scheduled event, in violation of Company expense policies, in order to extend her stay at luxury hotels. During those stays, TITO incurred tens of thousands of dollars in unauthorized room, food, alcohol, gift shop, parking, and spa charges. TITO also at times purchased separate rooms for family members traveling with her, which was also against Company policy. For example:

---

[1] Based on my conversations with representatives of Company-1, I know that Company-1 acquired Company-2, where TITO had been employed as an events director since 2001, in September 2020. Starting in September 2020, TITO was employed directly by Company-1. TITO performed substantially the same duties for both Company-1 and Company-2.

[2] Company-1 terminated TITO's employment for cause in or about March 2023, based on Company-1's belief that TITO had engaged in the scheme alleged in this Complaint.

a.      In or about October 2017, TITO charged approximately $6,336 in unauthorized expenses at a hotel in Manhattan ("Hotel-1"). TITO's fraudulent purchases at Hotel-1 included approximately $4,884 in excess room charges and over approximately $900 in food and alcohol charges. Similarly, TITO charged approximately $2,304 in fraudulent expenses during a stay at Hotel-1 in or about October 2022; approximately $2,619 in fraudulent expenses during a stay at Hotel-1 in or about November 2019; and approximately $2,412 in fraudulent expenses during a stay at Hotel-1 in or about February 2018. For each of these transactions, TITO represented to Company-1 and Company-2 that all charges were work-related.

b.      In or about March 2022, TITO charged approximately $23,071 in unauthorized expenses at a hotel in Palm Beach, Florida ("Hotel-2"). TITO's fraudulent purchases at Hotel-2 included an unauthorized suite upgrade; approximately $3,418 in purchases from the hotel gift shop; at least approximately $9,736 in unauthorized beach bungalow charges; and over $700 in spa goods and services. Similarly, TITO charged approximately $20,219 in unauthorized expenses during a separate stay at Hotel-2 in or about February 2020; and approximately $11,601 in fraudulent expenses during an earlier trip to Hotel-2 in or about February 2019. During the February 2019 stay, TITO rented rooms, charged meals, and ordered spa services for family members, in addition to herself, even though she was not permitted to charge Company-2 for expenses relating to her family members. For each of these transactions, TITO represented to Company-1 and Company-2 that all charges were work-related.

c.      In or about February 2023, TITO charged approximately $4,650 in unauthorized expenses at a hotel in Menlo Park, California ("Hotel-3"). TITO's fraudulent purchases at Hotel-3 included approximately $2,643 in excess room charges; $1,452 in spa services; and at least approximately $500 in unauthorized meal charges. Similarly, TITO charged approximately $2,342 in fraudulent expenses during a stay at Hotel-3 in or about May 2022; approximately $6,648 in fraudulent expenses during a stay at Hotel-3 in or about November 2018; and approximately $2,493 in fraudulent expenses during a stay at Hotel-3 in or about May 2017. For each of these transactions, TITO represented to Company-1 and Company-2 that all charges were work-related.

d.      In total, TITO defrauded Company-1 and Company-2 of at least approximately $106,000 in personal hotel expenses from approximately December 2015 through February 2023.

6.      Based on my review of documents and records provided by Company-1, as well as my conversations with representatives from Company-1, I know that throughout the course of the scheme, KAREN TITO, the defendant, also purchased at least approximately $107,000 in luxury goods, personal items, and services and falsely represented to Company-1 that such purchases were for work-related expenses when, in fact, the charges were personal purchases for TITO and her family members. For example:

a.      From in or about January 2021 through in or about February 2023, TITO charged approximately $49,669 in personal purchases from a prominent online goods retailer that were ultimately paid for or reimbursed by Company-1. In electronic expense reports submitted to Company-1, TITO represented that the charges were for work-related expenses such as "mailing supplies" and "gift items."

        b.      From in or about October 2021 through in or about February 2023, TITO used a credit card issued to her by Company-1 to purchase approximately $24,528 in personal goods from a luxury clothing retailer.  In electronic expense reports submitted to Company-1, TITO represented that the charges were for work-related expenses such as "mailing supplies" and "gift items."

        c.      From in or about February 2022 through in or about January 2023, TITO charged approximately $5,193 in personal purchases from a luxury transportation service to a credit card issued to her by Company-1.  These purchases included unauthorized trips for family members, transportation on weekends, and overseas travel.

        d.      From in or about January 2022 through in or about January 2023, TITO used a credit card issued to her by Company-1 to purchase approximately $2,403 in personal goods from a different luxury clothing retailer.  In electronic expense reports submitted to Company-1, TITO represented that the charges were for work-related expenses such as "mailing supplies" and "gift box" items.

        e.      From in or about January 2022 through September 2022, TITO used a credit card issued to her by Company-1 to purchase approximately $4,123 of women's jewelry items from a luxury jeweler.  In electronic expense reports submitted to Company-1, TITO represented that the charges were for work-related expenses such as "gift" items.

        f.      In or about February 2022, TITO used a credit card issued to her by Company-1 to pay approximately $2,896 for a D.J. service for a "Sweet Sixteen" party, but then falsely represented in electronic filings submitted to Company-1 that the charge reflected "AV equipment" rented for a work event.

        WHEREFORE, I respectfully request that a warrant be issued for the arrest of KAREN TITO, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.


Matthew Mahaffey
Special Agent
FBI


Sworn to me ~~through the transmission~~ of before me
~~this Complaint by reliable electronic~~
~~means (telephone),~~ this 6th day of December, 2023


THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York